UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
ASHEVILLE DIVISION
1:24-cv-00115-GCM

| JOSEPH WAYNE RIDDLE, | ) |  |
|---|---|---|
|  | ) |  |
| Plaintiff, | ) |  |
|  | ) |  |
| vs. | ) | **ORDER** |
|  | ) |  |
| C.J. WILSON, et al., | ) |  |
|  | ) |  |
| Defendants. | ) |  |

**THIS MATTER** is before the Court on initial review of Plaintiff's Complaint, [Doc. 1], filed under 42 U.S.C. § 1983. See 28 U.S.C. §§ 1915(e) and 1915A. Plaintiff is proceeding in forma pauperis. [Docs. 2, 5].

**I.    BACKGROUND**

Pro se Plaintiff Joseph Wayne Riddle ("Plaintiff") is currently a pre-trial detainee at the Yancey County Jail (the "Jail") in Burnsville, North Carolina. On April 17, 2024, he filed this action pursuant to 42 U.S.C. § 1983 against Defendants C.J. Wilson, identified as a Yancey County Sheriff's Deputy; Mark Gouge, identified as a Jail Administrator; William Smith, identified as a "Jailer;" Michael Robinson, identified as a Jail Lieutenant; and Levi Johnson, identified as a Jail Lieutenant and former Sergeant. [Doc. 1 at 2-5, 7]. Plaintiff purports to name all Defendants in their individual and official capacities. [Id.]. Plaintiff alleges as follows:

On September 23, 2023, presumably in front of the Prices Creek Store in Burnsville, North Carolina, [Doc. 1 at 9], Defendant Wilson "repeatedly groped and fondaled [*sic*] [Plaintiff's]" genitals during a "bodily search" even though Plaintiff "informed him … several times" that he "had no drugs or contraband," [Id. at 5]. Defendant Wilson intentionally

performed this search "in front of a busy public store." [Id.]. The same day, Plaintiff filed a P.R.E.A. grievance at the Jail presumably regarding this alleged search. [Id.]. To Plaintiff's knowledge, this grievance was never investigated.[1] [Id.]. Also on the same day, Defendant Johnson took Plaintiff from A-block and forced him to enter a confined space away from witnesses and intimidated and coerced Plaintiff "verbally and non verbally into rescinding [his] grievance." From then on, Plaintiff "[has] not felt safe to appeal any grievance best [Defendant Johnson] make good on his threats." [Id. at 8].

On or about February 20, 2024, Defendant Smith came to Plaintiff's block and "started communicating threats towards [the Plaintiff] because of a comment [he] made to another inmate regarding staff not doing [their] job." [Id. at 5]. Defendant Smith ordered Plaintiff to lockdown in his cell. Plaintiff complied and, after making his rounds, Defendant Smith stopped at Plaintiff's cell and "threw an object at [him] through the door trap." [Id.]. After seeing another inmate at Plaintiff's door, Defendant Williams returned to Plaintiff's block, entered Plaintiff's cell, and "proceeded to verbally assault [him] by slandering" Plaintiff's mother, girlfriend, and "future in prison," and threatened "to put his hands" on Plaintiff again. [Id. at 6].

Defendants Robinson and Johnson are "in charge of the Grievance Process in part or full" and failed to respond to "almost all grievances" Plaintiff submitted, including Plaintiff's P.R.E.A. grievance.[2] [Id. at 7].

Plaintiff purports to state constitutional claims for sexual assault, excessive force, denial of access to the courts, "denial of religious material," "denial of assembly," and due process

---

[1] On this claim, Plaintiff sues Defendant Gouge in his official capacity for injunctive relief. [Doc. 1 at 5].

[2] Plaintiff attached to his Complaint copies of several grievances. [Doc. 1-2]. They are dated January 8, 2024; February 13, 2024; February 14, 2024; and February 26, 2024. [Id.]. These grievances all include a response by a Jail official. [See id].

2

violation. [Id. at 4].

For injuries, Plaintiff claims he was "traumatized." [Id. at 10]. For relief, Plaintiff wants the Yancey County Sheriff's Department and Jail "[i]nvestigated for grievous actions against all," "moral justice be served to all," and compensatory and punitive damages. [Id.].

## II. STANDARD OF REVIEW

Because Plaintiff is proceeding in forma pauperis, the Court must review the Complaint to determine whether it is subject to dismissal on the grounds that it is "frivolous or malicious [or] fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2). Furthermore, under § 1915A the Court must conduct an initial review and identify and dismiss the complaint, or any portion of the complaint, if it is frivolous, malicious, or fails to state a claim upon which relief may be granted; or seeks monetary relief from a defendant who is immune to such relief.

In its frivolity review, this Court must determine whether the Complaint raises an indisputably meritless legal theory or is founded upon clearly baseless factual contentions, such as fantastic or delusional scenarios. Neitzke v. Williams, 490 U.S. 319, 327-28 (1989). Furthermore, a pro se complaint must be construed liberally. Haines v. Kerner, 404 U.S. 519, 520 (1972). However, the liberal construction requirement will not permit a district court to ignore a clear failure to allege facts in his Complaint which set forth a claim that is cognizable under federal law. Weller v. Dep't of Soc. Servs., 901 F.2d 387 (4th Cir. 1990).

## III. DISCUSSION

To state a claim under § 1983, a plaintiff must allege that he was deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed by a "person" acting under color of state law. See 42 U.S.C. § 1983; Am. Mfrs. Mut. Ins. Co. v. Sullivan, 526 U.S. 40, 49-50 (1999); Health & Hosp. Corp. of Marion Cnty. v.

3

Talevski, 599 U.S. 166, 143 S.Ct. 1444 (2023). The Court will address those claims fairly raised by Plaintiff's allegations.

A.  **Official Capacity Claims**

Suits against an officer in his official capacity "generally represent only another way of pleading an action against an entity of which an officer is an agent." Kentucky v. Graham, 473 U.S. 159, 165, 105 S.Ct. 3099 (1985) (1985) (quoting Monell v Dep't of Soc. Servs. of the City of New York, 436 U.S. 658, 690 n. 55, 98 S.Ct. 2018, 2035 (1978)). The Office of Sheriff is not liable under § 1983 for an employee's acts "unless action pursuant to official municipal policy of some nature caused [the] constitutional tort." Collins v. City of Harker Heights, 503 U.S. 115, 120-21, 112 S.Ct. 1061, 1066 (quoting Monell, 436 U.S. at 691, 98 S.Ct. at 2036). That is, "[f]or a governmental entity to be liable under section 1983, the official policy must be the moving force of the constitutional violation." Moore v. City of Creedmoor, 345 N.C. 356, 366, 481 S.E.2d 14, 21 (1997) (internal quotation marks and citations omitted). "Thus, the entity's 'policy or custom' must have played a part in the violation of federal law." Id. (quoting Monell, 436 U.S. 658, 694, 98 S.Ct. at 2037-38).

Plaintiff purports to sue the individual Defendants, who he alleges are employees of either the Yancey County Sheriff's Office or the Yancey County Jail, in their official and individual capacities. Plaintiff, however, fails to allege that any official policy was the moving force behind or otherwise played a part in any constitutional violation. The Court, therefore, will dismiss Plaintiff's official capacity claims.

B.  **First Amendment**

1.  **Denial of Access to the Courts**[3]

The Supreme Court stated in Bounds v. Smith, 430 U.S. 817 (1977), that prisoners must have meaningful access to the courts. The "meaningful access" referred to in Bounds does not, however, entitle a plaintiff to total or unlimited access. See Moore v. Gray, No. 5:04-CT-918-FL, 2005 WL 3448047, at *1 (E.D.N.C. Jan. 26, 2005), aff'd, 133 Fed. App'x 913 (4th Cir. 2005) (unpublished) (citation omitted). The right of access to the courts only requires that prisoners have the capability of bringing challenges to sentences or conditions of confinement. See Lewis v. Casey, 518 U.S. 343, 356-57 (1996). Moreover, as a jurisdictional requirement flowing from the standing doctrine, the prisoner must allege an actual injury. See id. at 349. "Actual injury" is prejudice with respect to contemplated or existing litigation, such as the inability to meet a filing deadline or present a non-frivolous claim challenging their conviction or conditions of confinement. See id.  A plaintiff's "[f]ailure to show that a 'nonfrivolous legal claim has been frustrated' is fatal to his Bounds claim." Alvarez v. Hill, 518 F.3d 1152, 1155 n.1 (9th Cir. 2008) (quoting Casey, 518 U.S. at 353).

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, Plaintiff has nonetheless failed to state a claim under the First Amendment based on denial of access to the courts.  Plaintiff alleges only that Defendant Robinson and Johnson have failed to respond to his grievances and that, on one occasion, Defendant Johnson "intimidate[d] and coerce[d]" Plaintiff into rescinding a grievance.  Plaintiff does not allege that he has been prevented from filing a non-frivolous claim challenging his conviction or the conditions of

---

[3] Plaintiff also claims that he was denied religious materials and "assembly."  [Doc. 1 at 4].  Plaintiff makes no allegations in support of these claims, and the Court declines to address them further.  They will be dismissed.

5

confinement. While the Prison Litigation Reform Act requires a prisoner to exhaust his administrative remedies before filing a § 1983 action, 42 U.S.C. § 1997e(a), exhaustion is excused "if a prisoner, through no fault of his own, was prevented from availing himself of it," Moore v. Bennette, 517 F.3d 717, 725 (4th Cir. 2008). As such, a Jail official's failure to process a detainee's grievance does not, in itself, support a claim for denial of access to the courts. The Court, therefore, will dismiss this claim.

### 2. Retaliation

An inmate has a clearly established First Amendment right to be free from retaliation for filing lawsuits. See Booker v. S.C. Dep't of Corrs., 855 F.3d 533, 540 (4th Cir. 2017); Thompson v. Commonwealth of Va., 878 F.3d 89, 110 (4th Cir. 2017). Inmates also have a protected First Amendment right to complain to prison officials about prison conditions and improper treatment by prison employees that affect them. See Patton v. Kimble, 717 Fed. App'x 271, 272 (4th Cir. 2018).

To state a colorable First Amendment retaliation claim, a plaintiff must allege that (1) he engaged in protected First Amendment activity, (2) the defendant took some action that adversely affected his First Amendment rights, and (3) there was a causal relationship between his protected activity and the defendant's conduct. Martin v. Duffy, 977 F.3d 294, 299 (4th Cir. 2020) (quotation marks and citation omitted). Retaliation claims brought by prisoners, however, are treated with skepticism because every act of discipline by a prison official is retaliatory in that it responds directly to prisoner misconduct. See Adams v. Rice, 40 F.3d 72, 74 (4th Cir. 1994). More, bare or conclusory assertions of retaliation are insufficient to establish a retaliation claim. Id., 40 F.3d at 74.

Taking Plaintiff's allegations as true and giving him the benefit of every reasonable inference, the Court finds that Plaintiff's allegations are sufficient to survive initial review on a retaliation claim against Defendant Johnson. Plaintiff, however, has not stated a retaliation claim against any other Defendant in this matter.

C. **Fourth Amendment**

The Fourth Amendment protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures…." U.S. Const. amend. IV. "Therefore, to be constitutional, a search must not be unreasonable." Amaechi v. West, 237 F.3d 356, 360 (4th Cir. 2001). In Bell v. Wolfish, "the Supreme Court established an analytical framework for determining the reasonableness of a sexually intrusive search." Amachi, 237 F.3d at 361 (citing 441 U.S. 520, 559, 99 S.Ct. 1861 (1979)). "In Bell, the Supreme Court held that a reasonableness inquiry requires a court to balance the need for the particular search against the invasion of the personal rights that the search entailed." Id. (citing Bell, 441 U.S. at 559). "This balancing requires a court to conduct a contextual analysis to determine reasonableness by analyzing 'the scope of the particular intrusion, the manner in which it is conducted, the justification for initiating it, and the place in which it is conducted.'" Id. (quoting Bell, 441 U.S. at 559).

Here, Plaintiff alleges that Defendant Wilson sexually assaulted him incident to Plaintiff's presumed arrest on September 23, 2023, by "repeatedly" groping and fondling his genitals "in front of a busy public store." [Doc. 1 at 5]. Taking these allegations as true and giving Plaintiff the benefit of every reasonable inference, the Court finds that Plaintiff's Fourth Amendment claim against Defendant Wilson based on an alleged unreasonable search incident to arrest is not clearly frivolous and survives initial review. Plaintiff, however, has failed to state

7

any such claim against any other Defendant in this matter.

### D. Excessive Force

The Fourteenth Amendment "protects a pretrial detainee from the use of excessive force that amounts to punishment." Graham v. Connor, 490 U.S. 386, 395 n.10 (1989). To state an excessive force claim, a pretrial detainee must show only that the force "purposely or knowingly used against him was objectively unreasonable." Kingsley v. Hendrickson, 576 U.S. 389 (2015). The standard for assessing a pretrial detainee's excessive force claim is "solely an objective one." Id. In determining whether the force was objectively unreasonable, a court considers the evidence "from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight." Id. (citing Graham, 490 U.S. at 396).

Taking Plaintiff's allegations as true for the purposes of this initial review and drawing all reasonable inferences in his favor, Plaintiff has failed to state a claim for excessive force under the Fourteenth Amendment. Plaintiff fails to allege what conduct he contends constituted excessive force, and the Court sees none from Plaintiff's allegations. Plaintiff's allegation that Defendant Smith threw an object at him through his trap door, without more, is insufficient to state a claim for excessive force. Moreover, the law is well-established that taunting comments, slurs, threats, and other verbal harassment by correctional facility staff, without more, are not actionable under § 1983. Wilson v. United States, 332 F.R.D. 505, 520 (S.D. W.Va. Aug. 19, 2019) (collecting cases); see Henslee v. Lewis, 153 F. App'x 178, 180 (4th Cir. 2005) (applying to jail officials). The Court, therefore, will dismiss Plaintiff's Fourteenth Amendment claim based on excessive force.

### E. Due Process

Plaintiff purports to state a constitutional "due process" claim, but he fails to allege how his due process rights were violated by the conduct alleged. [See Doc. 1 at 4]. To the extent Plaintiff contends his due process rights were violated by Defendant Gouge's allege failure to investigate his P.R.E.A. grievance or by the failure of Defendants Robinson and Johnson to respond to Plaintiff's grievances, he has failed to state a claim for relief. There is no constitutional "entitlement to grievance procedures or access to any such procedure voluntarily established by a state." Adams v. Rice, 40 F.3d 72, 75 (4th Cir. 1994). "An inmate thus cannot bring a § 1983 claim alleging denial of a specific grievance procedure." Booker v. S.C. Dep't of Corr., 855 F.3d 533, 541 (4th Cir. 2017). The Court, therefore, will dismiss Plaintiff's due process claim.

### IV. CONCLUSION

For the foregoing reasons, the Court concludes that Plaintiff's First Amendment retaliation claim against Defendant Johnson and Plaintiff's Fourth Amendment claim against Defendant Wilson survive initial review. Plaintiff's remaining claims, including his official capacity claims, fail initial review and will be dismissed.

### ORDER

**IT IS, THEREFORE, ORDERED** that Plaintiff's First Amendment retaliation claim against Defendant Johnson and Plaintiff's Fourth Amendment claim against Defendant Wilson based on alleged sexual assault survive initial review in accordance with this Order. Plaintiff's remaining claims, including his official capacity claims, are **DISMISSED**.

**IT IS FURTHER ORDERED** that Defendants Gouge, Smith, and Robinson are **DISMISSED** as Defendants in this matter.

The Clerk is instructed to mail one (1) blank summons to Plaintiff to fill out and identify Defendant Johnson, and then return the summons to the Court.[4] Plaintiff is required to provide the necessary information for the U.S. Marshal to effectuate service on Defendant Johnson. When the Court receives this summons from Plaintiff, the Clerk shall direct the U.S. Marshal to effectuate service upon Defendants Johnson and Wilson.

**IT IS SO ORDERED**.

Signed: May 15, 2024

Graham C. Mullen
United States District Judge

---

[4] Plaintiff submitted proposed Summonses with his Complaint for Defendants Wilson, Gouge, and Robinson, but not for Defendants Johnson or Smith. [See Doc. 1-3]. Plaintiff, therefore, must complete a Summons for service on Defendant Johnson.